UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

CLIFTON LAURELL FORD,

                Plaintiff,         10 Civ. 3800

  -against-                          OPINION

DEPARTMENT OF SOCIAL SERVICES (DSS),
NEW YORK STATE OFFICE OF CHILD SUPPORT
ENFORCEMENT, CHILD SUPPORT ENFORCE-
MENT UNIT (CSEU), SUPPORT COLLECTION
UNIT (SCU), and JANICE ADEL DYE,

                Defendants.

------------------------------------------X



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/22/11

A P P E A R A N C E S:

    <u>Attorney for Plaintiff</u>

    MARJORY CAJOUX, ESQ.
    406 Atlantic Avenue
    Brooklyn, NY  11217

    Attorney for Defendant
    <u>Support Collection Unit (SCU)</u>

    MICHAEL A. CARDOZO
    Corporation Counsel of the City of New York
    100 Church Street, Room 2-165
    New York, NY  10007
    By:  David A. Rosinus, Jr., Esq.

    Attorney for Defendant New York Office
    of Temporary and Disability Assistance,
    <u>Division of Child Support Enforcement</u>

    Attorney General of the State of New York
    120 Broadway, 24th Floor
    New York, NY  10271
    By:  Elizabeth Cohen, Esq.

**Sweet, D.J.**

Defendant State of New York Office of Temporary and Disability Assistance, Division of Child Support Enforcement ("OTDA") (collectively, the "Defendants") has moved pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), (5) and (6) to dismiss the Complaint of the plaintiff Clifton Laurell Ford ("Ford" or the "Plaintiff") seeking the vacatur of the judgment of the Family Court of the State of New York, County of New York entered on June 22, 1993 (the "Judgment"). Defendant Support Collection Unit of the city of New York ("SCU") has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Based on the conclusions set forth below, the motions are granted, and the Complaint dismissed.

**Prior Proceedings**

Ford filed his Complaint on May 10, 2010 requesting that this Court (1) vacate the Judgment against Ford and in favor of Defendant Janice Adel Dye ("Dye"), and (2) vacate the arrears that Plaintiff owes under that judgment to Dye, in the amount of approximately $400,000.00.

1

Ford has alleged that he paid at least $129,000.00 owed under the Judgment to Dye, but that Dye did not report these payments to any of the government Defendants. (Compl. ¶¶ 12-13.) He has further alleged that, as a result, the government Defendants have "failed to give [him] credit for" certain sums of money. (Id. ¶ 13.)[1] In addition, Ford has alleged that the government Defendants have miscalculated the amount of money that he owes to Dye, and that Dye did not report to the government Defendants that the child in question did not need child services after age six. (Id. ¶¶ 14, 16.)

Ford has alleged further that, as a result of these circumstances, the government Defendants are "requesting payment in the amount of approximately $400,000 . . . which Plaintiff does not owe to the Defendants [sic]." (Id. ¶¶ 15, 17.) Ford claims that, because he purportedly owes this money, he has been unable to secure employment, obtain a passport, rent an apartment, or travel, and that his health has been affected by the stress arising out of this situation. (See id. ¶¶ 20-23.)

---

[1] When a debtor is in default, Defendant SCU becomes involved in child support payments, and may issue an execution for support enforcement. See N.Y. C.P.L.R. § 5241(b).

2

Defendant OTDA filed its motion to dismiss on November 3, 2011, and Defendant SCU moved for judgment on the pleadings on December 14, 2010.

The motions were marked fully submitted on February 9, 2011.

**The Applicable Standard**

On a motion to dismiss pursuant to Rule 12, all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)).

A facially sufficient complaint may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) if the asserted basis for jurisdiction is not sufficient. See TM Patents, L.P. v. Int'l Bus. Machs. Corp., 121 F. Supp. 2d 349, 367-68 (S.D.N.Y. 2000); Peterson v. Continental Airlines, Inc.,

3

970 F. Supp. 246, 249 (S.D.N.Y. 1997). Once subject matter jurisdiction is challenged, the burden of establishing jurisdiction rests with the party asserting that it exists. See Thomson v. Gaskill, 315 U.S. 442, 446 (1942); Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996). The party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction. See Malik, 82 F.3d at 562; Gallo v. United States, Dep't of Treasury, Internal Revenue Serv., 950 F. Supp. 1246, 1248 (S.D.N.Y. 1997) (citing Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994)).

In determining a motion to dismiss a complaint under Rule 12(b)(2) for lack of personal jurisdiction, a federal court must first apply the law of the state where the court sits to determine if personal jurisdiction over a defendant exists. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). In assessing whether personal jurisdiction is authorized under New York law, the Court looks to whether the defendant is either "present" in New York or has committed acts within the scope of New York's long-arm statute. See N.Y. C.P.L.R. §§ 301, 302.

Pursuant to Rule 12(b)(5), "a complaint may be dismissed for insufficient service of process." Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V., 451 F. Supp. 2d 585, 589 (S.D.N.Y. 2006) (quoting Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 658 (S.D.N.Y. 1997)); see also Hawthorne v. Citicorp Data Sys., Inc., 219 F.R.D. 47, 49 (E.D.N.Y. 2003) ("Without proper service a court has no personal jurisdiction over a defendant."). On such jurisdictional matters, the plaintiff bears the burden of proof. See Commer v. McEntee, 283 F. Supp. 2d 993, 997 (S.D.N.Y. 2003) ("Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service.").

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Plaintiffs must

5

allege sufficient facts to "nudge [ ] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

The legal standard used to decide a motion for judgment on the pleadings made pursuant to Rule 12(c) is identical to the standard used to decide a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). See, e.g., Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).

**The Due Process Claim Is Dismissed**

Although Ford claims to seek vacatur of the Judgment (see Compl. ¶¶ 1, 26), the gravamen of his Complaint is that he has paid Dye at least $129,400.00 that Dye did not report to SCU, and that SCU has not credited him with such payment and continues to seek a total of approximately $400,000.00 from him as a result. (See id. ¶¶ 13, 15.) He has also alleged that Defendants miscalculated this amount, independently of their failure to credit him for amounts already paid. (Id. ¶ 14.) In effect, Ford contends that the Judgment has been satisfied (at least in part), not that it should be vacated, and that, by seeking money from Plaintiff in excess of what he owes, SCU is

6

attempting to deprive him of his property (i.e., his money) without due process of law.

However, if the process that a state provides to safeguard a plaintiff's protected interest from "mistaken or unjustified deprivation" is "constitutionally adequate," then the state has not violated that plaintiff's procedural due process rights. Zinermon v. Burch, 494 U.S. 113, 125-26 (1990) (internal quotations omitted); see also Wilbur v. Harris, 53 F.3d 542, 544-45 (2d Cir. 1995) (citing Zinermon, 494 U.S. at 125-26). To satisfy the requirements of due process, the state must simply make an adequate procedural remedy available to the plaintiff; the plaintiff need not have availed himself of that remedy. See, e.g., McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, 496 U.S. 18, 38-39 & n.21 (1990) ("The availability of a pre-deprivation hearing constitutes a procedural safeguard against unlawful deprivations sufficient by itself to satisfy the Due Process Clause, and [litigants] cannot complain if they fail to avail themselves of this procedure."); Adams v. New York State Educ. Dep't, No. 08 Civ. 5996, 2010 WL 624020, at *31 (S.D.N.Y. Feb. 23, 2010) ("[I]t matters not whether a plaintiff actually avails himself of the state court post-deprivation process. So long as that process is available, a due process claim must be dismissed." (internal quotations

omitted)) (citing <u>Hellenic Am. Neighborhood Action Comm. v. City of New York</u>, 101 F.3d 877, 881 (2d Cir. 1996)).

In New York State, when a support collection unit issues an execution for enforcement of current support or arrears, but there is "an error in the amount" purportedly owed, the debtor may assert that error as a "mistake of fact" and "shall have an opportunity to make a submission in support of the objection within fifteen days from service of a copy" of the execution. <u>See</u> N.Y. C.P.L.R. § 5241(a)(8) & (e). The agency must then rule on the objection and "notify the debtor of its determination within 45 days." N.Y. C.P.L.R. § 5241(e). If the agency does not agree with the debtor's objection, the debtor may file an Article 78 proceeding in state court to have the state court review the agency's determination. <u>See</u> <u>Lombardi v. Suffolk County</u>, No. 04-1216, 2007 WL 446733, at *6 (E.D.N.Y. Feb. 7, 2007) (citing <u>New York State NOW v. Pataki</u>, 261 F.3d 156, 168-69 (2d Cir. 2001)). "The availability of these processes satisfies the dictates of due process." <u>Id.</u> (citing <u>Rivera-Powell v. New York City Bd. of Elections</u>, 470 F.3d 458, 466-68 (2d Cir. 2006)).

Insofar as Ford claims that SCU seeks to recover from him an amount of money in excess of what he owes to Dye, or that

8

SCU has miscalculated the amount owed to Dye, he cannot bring a due process claim to rectify the situation, because state law offered him a constitutionally adequate pre-deprivation remedy. Accordingly, his due process claim is dismissed.

**The Rooker-Feldman Doctrine Bars this Action**

Construed liberally, the Complaint also alleges that the Judgment violated Ford's substantive due process rights under the Fourteenth Amendment by depriving him of his rights to money, employment, and travel. (See Compl. ¶¶ 1, 15, 21.) Under the Rooker-Feldman doctrine, however, this Court does not have subject-matter jurisdiction to review any of Ford's substantive due process claims, because Ford, by his own admission, is asking this Court to review and vacate a state court order. (See id. ¶¶ 1, 26.)

The Rooker-Feldman doctrine deprives federal courts of jurisdiction over lawsuits "that are, in substance, appeals from state-court judgments." Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005). "The doctrine derives from the mandate that under statutes governing the federal judiciary, district courts are 'empowered to exercise original, not appellate, jurisdiction.'" Phillips v. City of

9

New York, 453 F. Supp. 2d 690, 713 (S.D.N.Y. 2006) (quoting Exxon Mobil Corp. v. Saudi Basic Indus Corp., 544 U.S. 280, 283 (2005)). The Rooker-Feldman doctrine applies in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil, 544 U.S. at 284. It arises from "the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." Hoblock, 422 F.3d at 85.

Since the Supreme Court's decision in Exxon Mobil, which examined and clarified the application of the Rooker-Feldman doctrine, the Second Circuit has articulated four requirements for the doctrine's application, two substantive and two procedural. "Procedurally, the federal court plaintiff must have lost in state court, and the state court judgment must have been rendered before the district court proceedings commenced. Substantively, the plaintiff must complain of injuries caused by a state court judgment, and the plaintiff must invite district court review and rejection of that state court judgment." Phillips, 453 F. Supp. 2d at 713; see Hoblock, 422 F.3d at 85.

10

Here, Ford's substantive due process claims fit these four requirements squarely. Regarding Rooker-Feldman's procedural requirements, Ford concedes that the Judgment was "entered . . . against the Plaintiff and in favor of the Defendant [Janice Adel Dye]." (Compl. ¶ 1.) Moreover, the Judgment was rendered in 1993, long before Ford commenced this federal action on May 10, 2010. Thus, the Complaint easily meets the two procedural requirements for application of the Rooker-Feldman doctrine.

Ford's substantive due process claims also meet the substantive requirements of the Rooker-Feldman doctrine. He asks this Court to vacate not only the Judgment generally, but also, specifically, to vacate "the arrears in the amount of approximately $400,000." (Compl. ¶¶ 1, 26.) Thus, the injuries that arise out of his debt are attributable to the Family Court's judgment against him. Moreover, by requesting that this Court "vacate" the Judgment, Ford seeks review and rejection of that Judgment. As a federal district court of original jurisdiction, this Court may not conduct such a review.

Ford contends that he has exhausted his available remedies in state court by submitting a "motion and [a] letter" in which he "objected to the amount requested by" Defendants.

11

(Pl. Opp. 2.)  Ford wrote the letter to the New York City Office of Child Support Enforcement, but received no response.  (See Cajoux Aff. ¶¶ 10-11.)  Ford's motion asked an unspecified court for relief, but the court allegedly "failed to address the issue."  (Id. ¶ 12.)

Regardless, Ford fails to state a procedural due process claim as a matter of law.  His motion did not fall within the procedure contemplated in N.Y. C.P.L.R. §§ 5241(a)(8) or 5241(e).  These provisions contemplate a debtor's making a written objection to the local support collection unit itself, alleging that a "mistake of fact" has been made with respect to child support payments or arrears.  Moreover, even if the letter Plaintiff allegedly sent did satisfy the requirements of that procedure, Ford has not alleged that he filed an Article 78 proceeding, and hence cannot hope to establish a procedural due process claim.  See Chase Group Alliance LLC v. City of New York Dep't of Fin., 620 F.3d 146, 153 (2d Cir. 2010) ("[A] procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." (internal quotations omitted)).

12

Furthermore, even if Ford had properly alleged that he filed and then lost an Article 78 proceeding, that fact would be immaterial. In a due process inquiry, it is simply "'necessary to ask what process the State provided, and whether it was constitutionally adequate.'" Rivera-Powell, 470 F.3d at 465 (quoting Zinermon, 494 U.S. at 126). As discussed above, the state offered Ford a constitutionally adequate process, and that is where this Court's inquiry ends.

Ford has contended that the process that state law confers on debtors in Plaintiff's situation "is inadequate to satisfy the requirements of due process under the standard set forth in Spinelli v. City of New York, 579 F.3d 160, 170-75 (2d Cir. 2009)." (Pl. Opp. 3.) Spinelli's due process analysis arises out of the three-factor balancing test that the Supreme Court set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), which it used because no court had previously determined whether the post-deprivation remedy that the government provided in that case was adequate. See Spinelli, 579 F.3d at 170, 171-75. Here, by contrast, there is no need for this Court to engage in the Mathews balancing test, because, as noted above, the state process that was available to Ford is constitutionally adequate. See, e.g., Lombardi, 2007 WL 446733, at *6; Rivera-Powell, 470 F.3d at 466-68.

13

Ford has also contended that this Court has diversity jurisdiction over the subject matter of this lawsuit. However, even when a federal district court would otherwise have subject-matter jurisdiction, the Rooker-Feldman doctrine divests that court of jurisdiction.

Although the Second Circuit does not appear to have addressed this issue directly, other federal courts have held that "Rooker-Feldman . . . bars suits even where diversity jurisdiction otherwise exists." Segler v. Felfam Ltd. P'ship, 324 F. App'x 742, 743 (10th Cir. 2009) (citing Noel v. Hall, 341 F.3d 1148, 1155 (9th Cir. 2003) (Rooker-Feldman applies "even if a federal question is present or if there is diversity of citizenship between the parties"); see also, e.g., Thyne v. GMAC Mortg. Corp., No. 3:09-cv-377, 2010 WL 3075185, at *3 (S.D. Ohio Aug. 4, 2010) ("[D]iversity jurisdiction does not defeat the bar of Rooker-Feldman."). That this Court might otherwise have diversity jurisdiction over the case does not ameliorate the reasoning or application of the Rooker-Feldman doctrine.

Ford has also suggested that, notwithstanding any other argument in this case, "this Court has the power to vacate a judgment" pursuant to Federal Rule of Civil Procedure

14

60(b)(6), which permits a district court to "relieve a party . . . from a final judgment" for "any . . . reason that justifies relief." (See Pl. Opp. 3.) Ford reiterates his request that this Court vacate the arrears arising out of the Judgment, and suggests that the Judgment is causing him "extreme and undue hardship." (Id.; see also Cajoux Aff. ¶¶ 15-16.)

However, Rule 60(b)(6) only "'allows a district court to vacate its own final judgment.'" Socialist Republic of Romania v. Wildenstein & Co., 147 F.R.D. 62, 65 (S.D.N.Y. 1993) (quoting Harman v. Pauley, 678 F.2d 479, 481 (4th Cir. 1982)); accord Economist's Advocate, LLC v. Cognitive Arts Corp., No. 01 Civ. 9468, 2004 WL 728874, at *11 (S.D.N.Y. Apr. 6, 2004) ("[A] district court has the power to vacate its own judgment." (citing Fort Knox Music Inc. v. Baptiste, 257 F.3d 108, 110-11 (2d Cir. 2001))). Ford cites no authority for the proposition that Rule 60(b)(6) permits a federal district court to relieve a party from the effects of a state court judgment for "any . . . reason that justifies relief." Where, as here, Plaintiff seeks federal district court relief from a state court judgment, Rule 60(b)(6) is entirely inapplicable to his case.

Because the Rooker-Feldman doctrine proscribes federal district court review of state court judgments, this Court lacks

15

jurisdiction to hear these claims and, as such, they are dismissed.

**The Action Against OTDA Is Dismissed**

Even if Ford had properly asserted a claim under 42 U.S.C. § 1983, he would still have failed to state a claim against OTDA, because the actions on which Ford's claim rests attributable to the local SCU and not to the State. Thus, the Complaint is dismissed as to OTDA, because it does not include any allegations or facts demonstrating a violation of Ford's rights by OTDA. Therefore, pursuant to Rule 12(b)(6), the Complaint fails to state a claim upon which relief can be granted.

Ford alleges that he paid "an amount in excess of $70,000.00 to Dye which she failed to report to OTDA." (Compl. ¶¶ 12, 13.) He also alleges that OTDA "fail[ed] to give the Plaintiff credits for the payments which the Plaintiff ha[d] made throughout the years [and] miscalculated the amount of Child Support due by the Plaintiff." (Id. ¶ 14.) However, OTDA is not responsible for the amount of arrearage owed. That responsibility belongs to the New York City Human Resources Administration ("HRA").

16

HRA maintains a current balance due on the statewide Child Support Management System for all child support debtors with orders entered in New York County. See N.Y. Soc. Serv. L. § 111-h(1). If the child support debtor fails to make the required child support payments, HRA is required to enforce child support arrears. HRA tracks payments and maintains the case accounts, not OTDA. Therefore, Plaintiff's request to have his arrears vacated or corrected does not implicate OTDA's ministerial role in supervising the overall child support program in the State of New York.

In addition, OTDA has not been properly served. Under Federal Rule of Civil Procedure 4(j)(2),

> [a] state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner proscribed by that state's law for serving a summons or like process on such a defendant.

OTDA only became aware of this matter when an attorney with the Albany County Department of Social Services faxed a copy of Plaintiff's Summons and Complaint to Brian Wootan, an attorney for OTDA, on August 20, 2010. (See Wootan Aff. ¶ 2.) This does not constitute proper service on OTDA under Rule 4(j)(2) or N.Y. C.P.L.R. § 307. The Complaint is therefore dismissed as against

17

OTDA for lack of personal jurisdiction and insufficient service of process under Rule 12(b)(2) and Rule 12(b)(5).[2]

**Conclusion**

Upon the conclusions set forth above, Defendants' motions are granted and the Complaint is dismissed with prejudice and costs.

It is so ordered.

**New York, NY**
**March** 21, 2011

ROBERT W. SWEET
U.S.D.J.

---

[2]  In addition, because Plaintiff filed the Complaint on May 10, 2010 and failed to serve the Complaint on OTDA within 120 days of that date, the Complaint is dismissed as against OTDA. See Fed. R. Civ. P. 4(m).

18